UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES G. REECE, <br><br>　　　　　Plaintiff, <br><br>　v. <br><br>GARY SWARTHOUT, <br><br>　　　　　Defendant. | Case No. 13-cv-02515-SI <br><br> **ORDER OF DISMISSAL** |

## INTRODUCTION

Charles G. Reece filed this *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge an August 31, 2010 parole denial decision by the Board of Parole Hearings (BPH). For the reasons discussed below, the action will be dismissed because the court lacks jurisdiction to entertain a habeas petition challenging that parole denial decision.

## BACKGROUND

The petition for writ of habeas corpus alleged three claims for relief. The court dismissed two claims[1] and found cognizable a claim that Reece's right to be free from *ex post facto* laws was violated when the BPH denied him parole and set his next parole hearing in five years pursuant to California Penal Code § 3041.5(b)(3), as amended by Proposition 9 in 2008. Docket # 9. The amendment of § 3041.5 brought about by Proposition 9 allowed the BPH to lengthen the interval

---

[1] The court dismissed a claim that Proposition 9 did not apply to non-murderers as factually meritless and dismissed a claim challenging the evidence used to find Reece not suitable for parole as barred by *Swarthout v. Cooke*, 562 U.S. 216 (2011). Docket # 9 at 5-7.

1  between parole suitability hearings.  In Reece's case, the BPH set his next parole hearing date in
2  five years, whereas under the former law the BPH could not have set his next parole hearing date
3  more than two years after the last parole hearing date.  The detriment of having to wait a longer
4  period for the next parole hearing was the harm that allegedly violated Reece's rights under the *Ex*
5  *Post Facto* Clause.

6  On November 4, 2013, this action was stayed to await resolution of a case pending in the
7  Ninth Circuit that presented a controlling question of law.  *Id.* at 7-8.  The stay was lifted on May
8  7, 2015, when that Ninth Circuit case was dismissed.  See Docket # 10.  Shortly thereafter, the
9  Ninth Circuit decided another case, *Nettles v. Grounds*, 788 F.3d 992 (9th Cir. 2015), regarding
10 habeas jurisdiction.  This court thought *Nettles* presented at least the strong possibility that
11 dismissal of this action would be required, and invited the parties to brief their views on the
12 impact of *Nettles*.  See Docket # 11 at 1-2.  The parties then filed briefs discussing *Nettles*.

## DISCUSSION

The question now before the court is whether habeas jurisdiction exists for Reece's claim for relief.  In answering this question it is important to keep in mind the nature of the constitutional violation at issue in Reece's petition.  His claim of an *ex post facto* violation is based on the increased interval between parole hearings and is not based on any change in the substantive standards for parole suitability.

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Habeas jurisdiction is an "implicit exception" from the "otherwise broad scope" of 42 U.S.C. § 1983.[2]  *Nettles*, 788 F.3d at 999 (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005)).

*Nettles v. Grounds* attempted to resolve some ambiguities as to when claims must be

---

[2] "Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.

2

1   brought in a habeas action under 28 U.S.C. § 2254 and when claims must be brought in a civil
2   rights action under 42 U.S.C. § 1983.  "[R]elief is available to a prisoner under the federal habeas
3   statute only if success on the claim would 'necessarily spell speedier release' from custody, which
4   *Skinner* suggested would include termination of custody, acceleration of the future date of release
5   from custody, or reduction of the level of custody." *Nettles*, 788 F.3d at 1001 (citing *Skinner v.*
6   *Switzer*, 562 U.S. 521, 533-34 & n.13 (2011)).  Earlier Ninth Circuit cases indicating "that the writ
7   of habeas corpus may extend to claims that, if successful, would merely be likely to or have the
8   potential to lead to a speedier release" were "superceded by the Supreme Court's rulings." *Id*.
9   *Nettles* stands for the proposition that, to be cognizable in habeas, a claim has to necessarily
10  accelerate release – not just likely or merely potentially accelerate release – from confinement if
11  successful. *See id*. at 1000-01.

12      *Nettles* applied its necessarily-spells-speedier-release rule to an indeterminately-sentenced
13  life prisoner who sought restoration of 30 days of lost time credits and expungement of the rule
14  violation report that led to the loss of time credits. *See id*. at 1002. *Nettles* determined that habeas
15  jurisdiction was not established because neither form of relief would necessarily accelerate the
16  prisoner's release from prison, or terminate his custody, or reduce his level of custody. *See id*. at
17  1002-04.  Significantly, one could not determine that the restoration of time credits would
18  necessarily affect the duration of the prisoner's confinement because the prisoner had not yet been
19  found suitable for parole and it was unknown what his term would be if he was at some future date
20  found suitable for parole. *Id*. at 1003. "Without knowing how many years Nettles will serve
21  before the Board finds him suitable for parole or the length of his base term, we cannot conclude
22  that restoration of the lost good-time credits would necessarily affect the duration of Nettles's
23  confinement if and when the Board finds him suitable for parole." *Id.* at 1004.  The court also
24  rejected the argument that habeas jurisdiction existed because the expungement of the rule
25  violation report would remove "roadblocks to parole" suitability; although the rule violation report
26  "will likely have some effect on the Board's consideration, there is no basis for concluding that the
27  expungement of this report from the record will 'necessarily spell speeder release'" or reduce his

level of custody. *Id.* at 1003. [3]

Interestingly, *Nettles* has not been cited by any court in this circuit to dismiss a habeas petition challenging a parole denial decision. (This is not entirely surprising because *Nettles* was decided less than five months ago, and because there are now fewer habeas actions challenging parole denial decisions. Habeas actions challenging parole denials dwindled after the Supreme Court's decision in 2013 in *Swarthout v. Cooke*, 562 U.S. 216, ended the availability of a habeas challenge to the sufficiency of the evidence to support a parole denial.) One Ninth Circuit case since *Nettles* did conclude that a prisoner asserting due process and equal protection challenges to a parole hearing had to pursue his claims in a civil rights rather than a habeas action, but that case, *Erler v. Bisbee*, 2015 WL 5172853 (9th Cir. Aug. 25, 2015), is of limited value because it did not cite *Nettles* and was an unpublished decision. In *Erler*, the Ninth Circuit reversed the district court's dismissal of a civil rights action, holding that the prisoner's challenges to his parole hearing did belong in a civil rights rather than habeas. *Id.* at *1. Because the prisoner sought a new hearing and not immediate or speedier release, success in the action would not necessarily demonstrate the invalidity of the prisoner's continued confinement or its duration. *Id.*

Turning to the case at hand, success in this action for Reece would not necessarily affect the duration of his confinement. If an *ex post facto* violation is found, the remedies available in habeas could include an order requiring the BPH to hold a new hearing at a date sooner than otherwise scheduled. But ordering him released from custody, or setting his parole release date, would not be an appropriate remedy because Reece has never been found suitable for parole and his base term has never been set by the BPH. If Reece is not suitable for parole, an order for his

---

[3] *Nettles* also considered the case of a prisoner who was attempting to challenge a gang validation decision and concluded that challenge could go forward in a habeas action. This was so because the Ninth Circuit panel in *Nettles* was "bound by the determination" of an earlier panel in *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir 1989), that "a prisoner can seek expungement of an incident from his disciplinary record when that would lead to speedier release from disciplinary segregation." *Nettles*, 998 F.3d at 1005. *Bostic* had held that "[h]abeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restrictions of his liberty, such as disciplinary segregation, without due process of law." *Bostic*, 884 F.2d at 1269. This portion of *Nettles* is not relevant to Reece's case, because Reece was not put in disciplinary segregation or otherwise subjected to a greater restriction of his liberty as a result of the lengthier interval between his parole hearing dates.

4

release from prison would give him an unwarranted windfall for the alleged error of setting the next parole hearing too many years away.[4]  "[W]ithout knowing how many years [Reece] will serve before the Board finds him suitable for parole or the length of his base term," this court cannot conclude that a determination that an *ex post facto* violation occurred will necessarily affect the duration of Reece's confinement.  *See Nettles*, 788 F.3d at 1004.   If an *ex post facto* problem exists for Reece, it is with regard to the frequency of the parole suitability hearings and not with regard to the substance of the parole suitability decision at the most recent hearing.  Regardless of whether the *Ex Post Facto* Clause prohibits the BPH from lengthening the intervals between parole suitability hearings, the potential *ex post facto* problem here does not concern the inmate's parole suitability.  Success on the *ex post facto* claim might potentially accelerate release from custody, but only if several contingencies materialize, i.e., *if* the next parole suitability hearing is set sooner than five years after his last hearing, *if* Reece is found suitable at that hearing, *and if* Reece's base term would be completed sooner than the five-year interval after his last hearing. *Nettles*, however, held that habeas jurisdiction is not established where the claim merely has the potential to accelerate release from confinement, as is the situation with Reece's *ex post facto* claim.

Reece is in the same situation as the *Nettles* plaintiff: he is an indeterminately sentenced prisoner not yet found suitable for parole and for whom a base term has not yet been set. It cannot be said that accelerating the next parole hearing date will necessarily result in an earlier release date for Reece. *See Nettles*, 788 F.3d at 1002-04.  Habeas jurisdiction therefore is absent under the

---

[4]The possibility that the extended interval between parole hearings will result in a prisoner who is currently suitable for parole being kept in prison just to wait for the next parole hearing to be held in 3-15 years is ameliorated by the amended version of California Penal Code § 3041.5, which provides two routes to quicker consideration than the regularly scheduled subsequent parole hearing dates. First, section 3041.5(b)(4) now gives the board discretion to advance the date of the next parole hearing "when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner provided" by the statutory deferral periods. Second, section 3041.5(d)(1) now allows an inmate to petition the board to "exercise its discretion to advance a hearing . . . to an earlier date, by submitting a written request to the board, with notice, upon request, and a copy to the victim which shall set forth the change in circumstances or new information that establishes a reasonable likelihood that consideration of the public safety does not require the additional period of incarceration of the inmate."

reasoning of *Nettles*.

In theory, it should be possible for Reece to file a civil rights action to assert his *Ex Post Facto* Clause claim. There are two potential obstacles to such an action, which he should bear in mind in determining whether to spend the money to file a new civil rights action. First, Reece's efforts to exhaust state court remedies may preclude him from litigating the same claims in a civil rights action because state habeas proceedings can have issue or claim preclusive effects on later § 1983 actions. *See Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1347 (9th Cir. 1981) (state habeas proceeding precludes identical issue from being relitigated in subsequent § 1983 action if state habeas court afforded full and fair opportunity for issue to be heard); *Gonzalez v. California Dep't of Corr.*, 739 F.3d 1226, 1230 (9th Cir. 2014) (extending rule of *Silverton* to cover claim preclusion as well as issue preclusion). Second, the Ninth Circuit has already rejected a facial challenge to Proposition 9's changes to the frequency of parole hearings in California. *See Gilman v. Schwarzenegger*, 638 F.3d 1101, 1108-11 (9th Cir. 2011) (although extensive changes to frequency of parole hearings required by Proposition 9 appeared to create a significant risk of prolonging plaintiffs' incarceration, court concluded that availability of advance hearings to board precluded relief because such availability sufficiently reduced the risk of increased punishment for prisoners).

Although a district court may construe a habeas petition by a prisoner attacking the conditions of his confinement as pleading civil rights claims under 42 U.S.C. § 1983, *Wilwording v. Swenson*, 404 U.S. 249, 251 (1971), the court declines to do so here. The difficulty with construing a habeas petition as a civil rights complaint is that the two forms used by most prisoners request different information and much of the information necessary for a civil rights complaint is not included in the habeas petition filed here. Examples of the potential problems created by using the habeas petition form rather than the civil rights complaint form include the potential omission of intended defendants, potential failure to link each defendant to the claims, and potential absence of an adequate prayer for relief. Additionally, there is doubt whether the prisoner is willing to pay the civil action filing fee of $ 350.00 (plus a $50.00 administrative fee) rather than the $5.00 habeas filing fee to pursue his claims. The habeas versus civil rights

distinction is not just a matter of using different pleading forms.  A habeas action differs in many ways from a civil rights action:  (1) a habeas petitioner has no right to a jury trial on his claims, (2) the court may be able to make credibility determinations based on the written submissions of the parties in a habeas action, (3) state court (rather than administrative) remedies must be exhausted for the claims in a habeas action, (4) the proper respondent in a habeas action is the warden in charge of the prison, but he or she might not be able to provide the desired relief when the prisoner is complaining about a condition of confinement, and (5) damages cannot be awarded in a habeas action.  While a prisoner may think he has found a loophole that allows him to save hundreds of dollars – by filing a habeas petition with a $5.00 fee rather than the usual $350.00 filing fee (plus $50.00 administrative fee) for a civil action – the loophole proves unhelpful because he ultimately cannot proceed in habeas and will be charged the regular civil action filing fee to challenge conditions of confinement.  It is not in the interest of judicial economy to allow prisoners to file civil rights actions on habeas forms because virtually every such case, including this one, will be defective and require additional court resources to deal with the problems created by the different filing fees and the absence of information on the habeas form.

## CONCLUSION

For the foregoing reasons, this action for a writ of habeas corpus is DISMISSED for lack of jurisdiction.  The dismissal is without prejudice to petitioner filing a civil rights action under 42 U.S.C. § 1983, preferably using the court's civil rights complaint form.   The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  October 14, 2015

_____
SUSAN ILLSTON
United States District Judge

7